1  CRAIG ALAN HANSEN, # 209622
   GORMAN & MILLER, P.C.
2  210 N. Fourth Street, Suite 200
   San Jose, CA  95112
3  (408) 297-2222 (phone)
   (408) 297-2224 (fax)
4
   Attorneys for Plaintiff
5  John Gorman

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GORMAN, an individual; | Case No. C-04-4507 JW |
| Plaintiff; | PLAINTIFF GORMAN'S REPLY MEMORANDUM IN RESPONSE TO FRCP 11 NOTICE |
| v. | |
| WOLPOFF & ABRAMSON, L.L.P.;  MBNA AMERICA BANK, N.A., and DOES 1 through 100, inclusive; | Date:  Sept. 18, 2006<br>Time:  9:00 a.m.<br>Place: Ct. 8 |
| Defendants. | Hon. James Ware |

Plaintiff John C. Gorman ("Gorman") files this reply in response to the court's order to show cause regarding FRCP 11 sanctions.

## INTRODUCTION

On June 23, 2006, this court entered an order requiring that plaintiff Gorman show cause "why Rule 11 sanctions in the amount of Wolpoff's attorneys' fees and costs following the filing of the SAC should not be awarded." Gorman v Wolpoff & Abramson, LLP, 435 F. Supp. 2d 1004, 1014 (N.D. Cal. 2006). Gorman submitted a memorandum on July 31, 2006 explaining, inter alia, that: (1) Fed. R. Civ. P. 11(c)(1)(B) does not permit a district court to award reimbursement of "Wolpoff's attorneys' fees and costs"; (2) Rule 11 sanctions may not be based on oral statements made during oral argument; and (3) both the oral statement made at the April 25, 2005 hearing on defendants' motion to dismiss and the allegations of the Second Amended Complaint ("SAC") alerted the court and opposing counsel that it was Gorman's position that the harassing phone calls were made by a combination of persons.

Wolpoff filed a response on August 25, 2006 which makes several critical concessions.

First, Wolpoff "concedes ... that the Court apparently cannot *sua sponte* impose monetary sanctions that are payable directly to the Wolpoff firm." (Wolpoff Resp. at 2).

Second, Wolpoff acknowledges that oral statements made by Gorman at the April 25, 2005 hearing cannot "form the basis of the Court's ruling that Rule 11 has been violated" and that a Rule 11 violation must necessarily be based on "the written allegations Gorman made against the Wolpoff firm." (Wolpoff Resp. at 2)(emphasis in original).

Third, Wolpoff concedes that for court-initiated Rule 11 proceedings (as to which the Rule 11 safe harbors provisions are inapplicable) "it is correct that sanctions will ordinarily be imposed only in situations that are *akin to contempt of court* when the court acts *sua sponte*." (Wolpoff Resp. at 11; internal citations omitted). Case law makes plain that this is a very difficult threshold to meet. Nothing in Wolpoff's memorandum demonstrates that the allegations made in the SAC are "akin to a contempt of court."

1

Pltff. Gorman's Reply re Opp. FRCP 11, Case No. C-04-4507 JW

1                                        ARGUMENT

2  I.   THE ONLY SANCTION REFERENCED BY JUNE 23, 2006 ORDER TO SHOW CAUSE
        IS CONCEDEDLY UNAVAILABLE
3

4       District courts are <u>not</u> authorized to require that a litigant reimburse an opposing party's fees

5  and costs under Rule 11(c)(1)(B):

6               **No fee awards sua sponte**:   If the court initiates the Rule 11
                sanctions process, it cannot award attorney fees and expenses to other
7               parties.  Such awards are authorized only to the 'movant' on a 'motion.'
                [FRCP 11(c)(2); <u>Nuwesra v. Merrill Lynch, Fenner & Smith, Inc</u>. (2nd
8               Cir. 1999) 174 F3d 87, 94-95; see also ¶ 17:440]

9               Sua sponte sanctions are thus limited to fines payable to the court or
                'directives of a nonmonetary nature.' [FRCP 11(c)(2)]
10

11 Schwarzer, Tashima, & Wagstaffe, Practice Guide -- Federal Civil Procedure Before Trial (Rutter

12 2005) § 17:513.

13 This point is unequivocally conceded by Wolpoff.  (Wolpoff Resp. at 2, 12-13).

14      In the case at bar, the court issued an order asking Gorman to show cause as to why plaintiff

15 should not be required to pay to Wolpoff's "attorneys' fees and costs following the filing of the SAC."

16 <u>Gorman v Wolpoff & Abramson, LLP</u>, 435 F. Supp. 2d 1004, 1014 (N.D. Cal. 2006).   The court did

17 not ask Gorman to show cause as any other types of sanctions, such as paying a fine to the court.

18      Defendant's acknowledgement that the court has no authority to order plaintiff to reimburse

19 Wolpoff's legal fees and costs in the context of a court-initiated Rule 11 proceeding is dispositive of

20 the OSC.

21 II.  ORAL STATEMENTS MADE AT THE APRIL 25, 2005 HEARING CANNOT FORM THE
        BASIS OF A RULE 11 VIOLATION
22

23      The June 23, 2006 order made specific reference to a single colloquy between the court and

24 Gorman that occurred at an April 25, 2005 hearing.  <u>Gorman v Wolpoff & Abramson, LLP</u>, 435 F.

25 Supp. 2d 1004, 1013-1014 (N.D. Cal. 2006).

26      As noted in Gorman's response to the OSC, Rule 11 "<u>applies only to assertions contained in</u>

27 <u>papers filed with the court</u>.  It does not cover matters arising for the first time during oral

28 presentations to the court, when counsel may make statements that would not have been made if there

                                                    2

had been more time for study and reflection."  Advisory Committee Notes to the 1993 Amendments to Fed. R. Civ. P. 11, subdivisions (b) and (c)(emphasis added).  Wolpoff admits that Gorman is right and that a Rule 11 OSC needs to be based on "<u>written</u> allegations."  (Wolpoff Resp. at 2; emphasis in original).  "Gorman also argues that 'oral representations at hearings' cannot form the basis for sanctions under Rule 11.  <u>On this point, he is correct</u>."  (Wolpoff Resp. at 12n.8)(emphasis added).

III. <u>THE ALLEGATIONS OF THE SAC ARE NOT AKIN TO A CONTEMPT OF COURT AND DO NOT VIOLATE RULE 11</u>

Wolpoff urges that the "Second Amended Complaint falsely alleged <u>that the Wolpoff firm made 'hundreds' of threatening and harassing calls</u>, including 'hang up' calls, and that the firm ignored Gorman's request to cease calling."  (Wolpoff Resp. at 5; emphasis added)).  The allegations of the SAC show that this is not the case:

> Beginning in or about June and July 2003 and continuing through on or about February 20, 2004, <u>defendants MBNA, Wolpoff, and Does 1-20</u> placed multiple telephone calls to plaintiff at both his residence and his office in an attempt to collect payment of the disputed charges.  On information and belief, the <u>defendants</u> placed at least several hundred telephone calls to plaintiff despite being repeatedly instructed not to call.  Such calls were placed at various times of the day, including early mornings and late at night, as well as on weekends."

(SAC, ¶ 10)(emphasis added).

The allegations of the SAC are not willfully misleading and are certainly not "akin to a contempt of court."

The SAC -- which is not signed by Gorman -- did <u>not</u> remotely allege that Wolpoff placed all of the calls.  The SAC did not even allege that Wolpoff made "any serious portion" of the calls.  <u>Gorman v Wolpoff & Abramson, LLP</u>, 435 F. Supp. 2d 1004, 1014 (N.D. Cal. 2006).  Instead, Gorman alleged that the collection calls were placed by a <u>combination</u> of MBNA, Wolpoff, and unknown third-parties.  Gorman has consistently said that he was not able to determine what portion of the calls were placed by Wolpoff at the time that the SAC was filed.

It is undisputed that Wolpoff's counsel, Tomio Narita, had been asked by Gorman's counsel prior to the filing of the second amended complaint to provide call log records that would show which calls had been placed by Wolpoff and which calls had been placed by others.  <u>It is also</u>

3

1  <u>uncontroverted that Narita refused to provide these records</u>.  As a result, Gorman knew only that he,
2  his family, and his office staff had been subjected to repeated harassing collection calls extending
3  over a period of many months and that Wolpoff was part of it.  It is now known, based on a Wolpoff
4  call log that was provided after the SAC was filed, that Wolpoff was responsible for at least 24 of the
5  collection calls.

6        Wolpoff does not dispute that its counsel refused to provide copies of its call records to
7  Gorman prior to his filing of the SAC.  Instead, Wolpoff argues that Gorman's need for these records
8  "highlights the fact Gorman had no idea how many times Wolpoff firm had call him."  (Wolpoff
9  Resp. at 10).  However, Rule 11 does not require a plaintiff to have detailed knowledge of the facts
10 and evidence to support his allegations at the time the pleadings are filed.  Rule 11 requires only that
11 these allegations "<u>are likely to have evidentiary support after a reasonable opportunity for further
12 investigation or discovery</u>."  Fed. R. Civ. P. 11(b)(3)(emphasis added).

13       By law, placing even <u>one</u> collection call can violate the FDCPA where the consumer has
14 indicated that he is refusing to pay a disputed debt or has requested not to be contacted or where the
15 call is made "at any unusual time or place or a time or place known or which should be known to be
16 inconvenient to the consumer."  15 U.S.C. § 1692c(a)(1) and (c).  As held in <u>Akalwadi v. Risk
17 Management Alternatives, Inc</u>., 336 F. Supp. 2d 492 (D. Md. 2004), "[t]he FDCPA is a strict liability
18 statute <u>and a consumer only has to prove one violation to trigger liability</u>."  (Emphasis added).
19 Wolpoff's records confirm that it placed two dozen <u>unwanted</u> calls to Gorman's home and office.
20 Plaintiff continues to believe that 24 unwanted calls is a significant number of harassing calls.

21       Wolpoff also argues that "[s]imilar conduct was held sanctionable" in <u>Townsend v. Holman
22 Consulting Corporation</u>, 929 F.2d 1358 (9th Cir. 1990).  However, <u>Townsend</u> involved a motion for
23 motion for sanctions brought by a defendant, not a court's *sua sponte* order to show cause.  As
24 discussed in Gorman's initial response to the court's order, a heightened standard applies to *sua sponte*
25 court-initiated motions as they lack the "safe harbor" provisions that are otherwise available.
26 Moreover, <u>Townsend</u> is factually distinguishable.  In that case, an employee had brought an action
27 against an employee benefit plan, fiduciaries, and the plan's legal counsel to compel payment of
28 certain medical benefits.  The plaintiff persisted in his claims against the Plan's counsel even after

1  receiving conclusive evidence that they "had nothing to do with the adoption, implementation, or
2  administration of the Plan and that the law firm was retained only for the purpose of litigation." Id. at
3  1366. In contrast, Wolpoff cannot and does not say that it "had nothing to do with" the placement of
4  collection calls to Gorman, as they concededly placed 24 of these calls.[1]

5  Wolpoff is trying to twist the allegations of the SAC into something they are not. Gorman
6  respectfully urges the court not to follow suit. Gorman did not allege that Wolpoff placed all of the
7  several hundred calls. What Gorman alleged was that MBNA, Wolpoff, one or more computers, and
8  others placed the harassing calls.[2] Gorman's allegation that Wolpoff participated in placing some of
9  the unwanted collection calls turned out to be 100% true.

10  If Wolpoff believed that the SAC's allegations were not sufficiently certain to state a claim
11  under the Fair Debt Collection Practices Act, it could have filed a motion to dismiss or a motion for
12  more definite statement. It did not do so. Rule 11 does not authorize sanctions against a plaintiff for
13  making allegations that are uncertain. It authorizes sanctions for signing a pleading that was
14  knowingly false and "akin to a contempt of court." That did not happen here. At worst, plaintiff's
15  allegations may have lacked specificity (as they sometimes do under the liberal federal pleading
16  standards).

17  Gorman never intended to mislead the court and apologizes if the court misunderstood what
18  Gorman was trying to convey about the collection calls that were received.

20  GORMAN & MILLER, P.C.

22  By   /s/   
   CRAIG ALAN HANSEN
23  Attorneys for Plaintiff

---

[1] Wolpoff also cites Terran v Kaplan, 109 F.3d 1428 (9th Cir. 1997), and Truesdell v Southern California Permanente Medical Group, 209 F.R.D. 169 (C.D. Cal 2002). Neither of these cases involve motions for sanctions initiated by a court's *sua sponte* order to show cause.

[2] MBNA's records documenting the collection calls that it placed have still never been produced. MBNA's Initial Disclosure and discovery responses also revealed that MBNA turned Gorman's account over to a collection agency; the collection agency's call records similarly have not been provided. There is no evidence converting Gorman's assertion that hundred of collections calls were placed.

5